And we will move on to our second case for this morning, which is Driveline Systems v. Arctic Cat, Inc. Good morning. Are you Ms. Koch? Ms. Koch? Koch. Americanized pronunciation, German last name. May it please the Court, Attorney Jocelyn Koch on behalf of Appellant Driveline Systems, LLC. What we have before the Court today is a case that involves a contract by conduct for specially manufactured goods produced by a captive vendor as a just-in-time supplier. Now all of those are, of course, wonderful terms of art all stacked in a row, but they all very much have a bearing upon the contractual relationship that developed between Driveline and Arctic Cat over a decade of business that they conducted between each other. So before you get too deeply into the law of contract, I want to take a detour into the law of procedure. As I can best sort this out, it appears that there's a partial summary judgment, which is adverse to your affirmative claim, at which point there's a trial on damages on the counterclaim, which is in a sense a mirror image of your claim? In a sense, Your Honor. At the summary judgment stage, Arctic Cat filed a motion for summary judgment on the entirety of the second amended complaint that Driveline had filed against Arctic Cat, as well as their counterclaim. At that time, Driveline had filed its own partial motion for summary judgment, just specific to calculation of damages upon the counterclaim, should they prevail. It was fully briefed, and the court spent the bulk of its time and determination on count two, which is what we are bringing before the court today. That is when the court engaged in its evaluation of liability and which party breached first. At that time, it determined that Driveline breached the contract first, which then further... As a matter of summary judgment. As a matter of summary judgment, they determined that Driveline breached the contract first. When you get to the court's decision on the counterclaim, there is no further discussion of liability. There is no further evaluation, even at the summary judgment stage, of which party breached first. Merely there is the conversation that there were too many genuine issues of material fact as to the calculation of damages, so those would have to proceed to a trial. Subsequent to that... So somehow it seems that the judge has in his mind that he has resolved, as a matter of law, finding no genuine issues of material fact on the question, who breached first. Correct, Your Honor. And we indicated... And that there was a contract. Does the judge ever nail down what the terms of this contract are? Not really, Your Honor. He evaluated two specific terms to the exclusion of all others, and if you review the case and decision of the judge, you'll see in a footnote he even acknowledges that the other breaches of other terms of the contract that Driveline alleged, there were too many genuine issues of material fact to even reach an evaluation on those terms, which is one of the reasons that Driveline advances that it was premature to enter summary judgment. You know, on its face, that's an acknowledgment that there were other terms in the contract which very well could have been breached prior to any dispute over the terms that the Court focused on. The parties have advanced disputed evidence to that fact. I think Judge Rovner... on the counterclaim, on Ardicat's counterclaim. So aren't you stuck with any findings that were entered after the Rule 52 trial as to the terms of the parties' agreement as to when, for example, Ardicat notified Driveline that it intended to switch suppliers? I do not believe so. I do not believe so based upon other procedural cases that are similar to the case at hand where you have a granting of partial summary judgment and then in the interest of efficiency so as to not clog this Court up with a myriad of interlocutory appeals since all claims were not resolved. We did not have a final resolution. The parties agreed to a trial on the papers to simply resolve the two very narrow issues so that we could proceed with appeal. The two narrow issues are the damages issues? They were the damages issues. On count one, it was for products that Driveline had delivered that were not rejected by Ardicat and then because of the original finding of liability upon count two, damages needed to be determined and evaluated and were quite candidly, deeply evaluated upon the trial on the papers. These are essentially the cover damages, right? Correct. Which cover damages don't arise unless you have a finding of liability that the other party breached first. And that is the essence of count two. This Court had a similar procedural posture in front of it in JECW Investments v. Novelty, Inc., which was a 2007 case, which to the Court is smiling because it's an amusing case if anyone wants to read the facts at some point. But there was a determination of liability at the summary judgment stage concerning the fact that there was a claim of copyright infringement and copyright infringement had occurred. However, there were too many issues in material fact to determine the damages amounts. They proceeded to a trial on the damages for that plus other claims that were under that complaint. And even though that trial occurred and those facts would be overlapping and similar and there had already been the finding of liability, which they would readdress in factual findings when they're determining damages, this Court still reminded all of the appellants that a review of partial summary judgment or complete summary judgment is reviewed de novo, even if there is a subsequent trial on remaining counts or as to damages. So we believe not only is it procedurally proper under the law, but in looking at whether people are going to utilize trials on the papers in order to expedite getting towards appeal or whether they're going to file even more interlocutory appeals clogging up this Court's time, I think it would have a chilling effect if this Court were to determine that the trial standard applies to finding of liability at the summary judgment stage. So explain to me what you think the critical error or errors were that the district judge made on that partial summary judgment. The judge distinguishes between the delivery time is time of the essence and payment is whenever you feel like doing it, or at least if there's nothing concrete in whatever papers make up the contract. Your Honor, what we would say is that there were several errors made by the Court at the summary judgment stage. The first and foremost which I can address after I address Your Honor's question on payment and delivery is the fact that when you have a case as hotly contested over a decade as this one has been, the parties can't agree on virtually anything, especially the contract terms, and have presented multiple reasonable interpretations of what the terms of those contracts would be. And under the law... Because you're in this 2207 contract by conduct... Correct, Your Honor. And those terms include those which the parties' terms agree, those through course of performance or course of dealing, the gap filler provisions of the code, as well as usage of trade or industry standard terms. There's been competing expert witnesses, there's been a lot of evidence presented as to course of performance and dealing, and the parties actually vehemently disagree as to the timing of things, such as when delivery occurred, when payments occurred, the amounts at any given time, the due dates. So we think that it was wildly premature to grant summary judgment on those facts because there had to be a weighing of evidence and a weighing of these heavily disputed facts and interpretations. So if we were to rule for you, though, we would have to set aside the damages verdict too, or at least provisionally. If you were to lose again on remand, then perhaps that would spring back into being. Correct, Your Honor. It would, because we were appealing finding of liability, which was carried over into other findings, we would be asking for a remand so that we could get the trial that we had been so desperately seeking in front of a jury for a decade. And that would necessarily provisionally unwind the damages awards insofar as the results of the trial. They could be very well that Driveline gets the trial it so desperately wants and still loses. But procedurally and under the law, I believe Driveline is entitled to have that trial as there are too many disputed issues of fact. Now, as to Your Honor's previous question, payment and delivery, the three separate reasonable, but different interpretations of those terms. The first was Articat's terms were not silent as delivery, but were silent as to payment. In Driveline's terms, he deemed as silent to both. Now, Articat's terms said, you know, delivery must be prompt, payment, nothing. So he determined that the payment then, or the delivery must be prompt, payment could be within a reasonable time. In doing so, he then evaluated under gap filler provisions what would be appropriate and utilized the wrong gap filler under the code. So you want him to go to the gap filler that says, if nothing is said, then you've got to pay immediately. Correct. It's upon delivery. That's a well settled law in the state of Illinois. It's a well settled law under the code. They kind of go hand in hand. You have 2309 for delivery and you have 2310 for payment. Then he evaluated the course of performance, which we have conflicting testimony on. We have Driveline's president testifying that they were always in constant contact because of the holistic nature of the relationship. In order for Driveline to be able to perform any of its side of the contract, it had these lengthy lead times. It had to advance a lot of money well into advance of receiving any money from Arctic Cat. So it was at a risk of financial exposure. Could I go back for a minute though? If there was a default clause in the contract, a gap filler from 2310 payment on delivery, the parties never did that. There was a course of conduct that showed something quite different. The course of conduct between the parties originally was at the most it would be within eight days and then eventually over time it evolved into 30. Maybe about 30, but it's not on delivery. You allowed late payments. There was a history of late payments. There was a history of payments that were within the same period of time throughout the contract. The history was it would be between eight days and then 30 days and they would pay upon the employees in contact not only to know what order levels were going to be so that they could procure the raw materials and keep making sure that they had enough work in process and finished inventory, but also what money would be incoming in order to be able to continue that production slide. Your argument has to be that there's a course of conduct that gives a 30-day payment period. It does, Your Honor. Not only does it give the 30-day pay period, but it is that point of the relationship was like an organism constantly feeding on itself and in through each other. At the December point of 2007, that started to change where you can see through evidence that we presented that the aged accounts receivable were starting to expand and at the same time the orders were starting to plummet. All that does is feed into the fact that there's becoming a lack of working capital for Driveline to be able to continue performing under the contract. It's not that the payments were routinely late, it's just that was the course of performance between the parties, which changed. Before they would be able to call, resolve, payments would be made and they would be made within the same timely fashion. It changed then where payments were not made when they said. I'm sorry, when was the moment of breach then in your view? How stale did the accounts receivable have to get before there's an actual breach under your understanding of what you're arguing for? What we're arguing for is not solely a breach based upon payment and delivery, but a holistic approach, which we believe is required under the law as to the totality of the contract and the terms. Because we believe there are also breaches based upon the open and honest communication that was industry standard in such captive vendor relationships that they needed to have a phase in, phase out plan and communicate, which on its face is reasonable. Because if you have someone with eight months of lead time that are accruing millions of dollars worth of inventory in order to be able to perform a very quick turnaround for their client, you need to have a feasible workout plan so they stop ordering raw materials. They stop producing the inventory. Otherwise, through that concealment... Sorry, Your Honor. Bottom line. Bottom line. What do you think your damages are? Our damages, we would argue, are due to the failure of working that phase out plan, due to the concealment of the resourcing decision so that my client was continuing to buy inventory. The experts we presented have said the damages could be as large as six and a half million dollars. But it's the phase out period. You concede that they could terminate this relationship if they wanted to if the phase out was handled according to industry standards. Correct, Your Honor. It is a free market. They are entitled to resource to China and no longer use American products because they get a lower rate. That is permissible. We might not look favorably upon it, but it is permissible. They're not required to ensure the perpetual success of driveline. What they are required to do is engage in good faith and open and honest communication so that the damages don't keep accruing, so that there can be planning. The expert witness, which you'll note we cited in our brief, had said that it was always common in these sorts of just-in-time supplier cap to vendor situations that the parties would work together in an open and honest manner to say, you know, this decision has been remade. You need to have the opportunity to exhaust your inventory and not keep manufacturing, not keep having to pay your employees or enter into contracts for new equipment that you apparently were never going to need, which occurred also in this case. You don't see a range of possible damages. You see the absolute bottom line of damages at $6.5 million. I think there could be a range, Your Honor. I think that when we present it to a jury, a jury could say that certain damages did not stem maybe from the breach between the parties. That's always within the province of the jury to evaluate the evidence presented and maybe decide that, you know, you get credit for a certain amount of this inventory, but maybe this wasn't reasonable within your jurisdiction to evaluate that, you know, simply because you acquired new equipment in order to be able to meet these deadlines and perform under this contract. That's not the responsibility, perhaps, of ARTICAT, whether you entered into those contractual relationships and then can meet your obligations. Obviously, we would argue that driveline, you know, is entitled to those damages, but that could be reduced in amount depending upon the I believe I'm eating into my rebuttal time. You are. If you would like to say that, you are welcome to do so. I would like to. Thank you, Your Honor. All right. We have another pronunciation challenge. Are you Mr. Hotari? Very good, Your Honor. Thank you. Joel Hotari on behalf of ARTICAT. Too many vowels for one name, I agree. It's a challenge. Good morning, Your Honors. As I say, I represent ARTICAT, and it's our position that this is really a self-inflicted wound. As the record demonstrates, ARTICAT was more than happy to effect as long a wind down as required. They wanted to do that, and they wanted to continue to buy other parts other than the half shafts from driveline. They were prevented from being able to contract out of ARTICAT by holding the parts hostage, shutting down the assembly line, and trying to get leverage over ARTICAT to get a binding exclusive three or five year contract out of ARTICAT. So don't we need to back up? Go ahead. Sorry. What specific findings did Judge Capalla make after the Rule 52 trial that you think are particularly relevant to driveline's appeal? He found in the Rule 52 order that in August 2007, ARTICAT told driveline that it had received lower price quotes from another supplier of half shafts, and that it wanted to give driveline a chance to drop its price in order to keep the business. Can I just say, maybe this is a question of how clearly district judges need to do this, because he wrote things down in the Rule 52 order, but then he has the clarification in that brief little conference you all have after the trial on damages, where he says, oh, the Court of Appeals will know how to sort this out. Some of my statements of fact stem from the partial summary judgment, and I approached the facts in that light, and others came from the trial. And he kind of breezes by this, and it is actually a little bit difficult to see what he's doing. So what I've been trying to think is that he finds no genuine issues of material fact on what the contract says and who breached it first. I don't see how he can figure out who breached it first without coming to some conclusion on what combination of agreed articles and forms and course of conduct and industry usage and all those other things that the UCC makes relevant. So he somehow finds that. And then he plugs those undisputed findings into the damages trial, which is on the papers, and those are certainly Rule 52 findings, but it's muddy at best. It wasn't just a trial on damages, Your Honors. Well, he says it is, though. Well, to keep in mind, though, we moved for summary judgment on the counterclaim, and we were denied. So at the trial on the papers, we had to prove all the elements of our cause of action. We had to prove there was a contract, the driveline breached it, and that it caused damages to Arcticat. And we did that. And the factual findings, to get back to Judge Roebner's question, they're laid out, and I can quote them all to you, but they are factual findings that we proposed in our proposed findings of fact in our trial brief that he adopted at the trial. Those are findings of fact that should not be unbuttoned by a potential remand going back in time and reevaluating those same fact issues in a second trial, whether it's waiver because they didn't appeal the judgment on the counterclaim, whether it's collateral estoppel, or whether the judge ultimately has to decide it's the law of the case. Those issues have been resolved, and they have not been challenged on appeal. I don't know about that. I mean, there's language in the district court's opinions that very much seems to point to the trial as a limited trial on damages. He calls it that. I mean, it's not my label. And I recognize the difficult position everybody's in, you included, because of the way he doesn't separate out the counterclaim and the primary claim. They're just mirror images on the count two issues. Well, and I think the way to think of this, Your Honors, is if he found certain facts as being uncontested material facts at the summary judgment stage, and then he reviewed and adopted those same factual findings at the Rule 52 stage. That's what I don't know if he did. That's precisely, you put your finger on it, because if he just plugs in the summary judgment facts and then says, now Part 2, the damages, then we would review the summary judgment facts the way we always do, de novo, taking them in the light most favorable to the opponent of that motion for summary judgment. But that's exactly what he did. And you can see that because... So we can do de novo review of the issue. Was there a contract? What were his terms? No, no. Breached first. You have to review that for the clearly erroneous standard. Why? Because we went to trial on that issue. No, you went to trial on damages. That's not fair, Judge, because if you look at the order on summary judgment, he denied summary judgment to Arcticat on the counterclaim. That means that issue is still... Because you didn't have the damages. I'm just looking at this. But anyway, go ahead. If you take a look at our proposed findings of fact for the trial, they include dates that things happened. They include facts about who said what when. They include all those factual findings. And he adopted those right out of our proposed findings of fact and put them into his Rule 52 order. That led to the judgment, not just on damages. We were not entitled to go to trial on our counterclaim and only talk about damages. Here's what I'm looking at. You can explain to me what he means. It's at the top of page 20 of Judge Coppola's opinion. He says, however, Bernadowitz's In any event, there are genuine issues of material fact as to the damages Arcticat is due on its counterclaim, which precludes summary judgment. Therefore, Arcticat's motion for summary judgment is denied as to its counterclaim. The way I read that is that he's not going to let you win on the counterclaim until you've proven up damages. That's absolutely right. But think of it, Judge. We have a number of elements to prove. So liability is done at the summary judgment stage. I respectfully disagree. We did not get a pass on proving liability at the trial. We still had to prove that. All of the elements of our cause of action, we still had the burden on under Rule 52. And we met that burden under Rule 52. His order did not say, I'm going to grant Arcticat partial summary judgment by finding liability against driveline on the counterclaim. And we're only going to reserve the issue of damages. If that were the case, we would be in a different posture here. And I agree, the outcome could be different. He didn't do that, though. He said, summary judgment to Arcticat is denied on the counterclaim. You're going to have to come and prove your case on the counterclaim in full at a trial. And that's what we did. And that's why the clearly erroneous standard should apply. And if these issues wanted to be preserved for appeal, they had a vehicle for doing so. They should have appealed the ruling on the counterclaim. That was my question. Is that where it all went wrong for driveline? I believe so. Say it again. I believe that that was a fatal mistake, that they did not appeal the judgment on the counterclaim. Because now that judgment stands. It is not the subject of this court's review. It is not appropriate to review the factual findings that were made. And those factual findings that were made are critical to count, too. Absolutely critical. For example, the court found on the trial on the papers that in December 2007, Arcticat rejected driveline's proposal and expressed the informed driveline that it would be losing the half-shaft business. Opposing counsel wants you to review that issue de novo because they say that it didn't learn about that until much later. Right, so it says there was a contested issue and it was a mistake to grant partial summary judgment on that point. That's the argument that she's got before you. I'm just characterizing her argument. That issue's already been settled. It was resolved at a trial. Well, I think we need to look at the trial transcript, frankly. There is no transcript, it's just papers. How are we supposed to know that you, quote, presented and did this at trial when there is no transcript? Well, the record shows, and it's all cited in my briefs, with proposed findings of fact. And I outline half a dozen of those proposed findings of fact that the judge adopted in his order that came directly out of Arcticat's proposed factual findings. But what about that statement, it's in the reply brief in the appendix, where there's a motion for clarification made by Ms. Cook about what that order resolving, whatever it is that it resolved, did. And she says, we did this with the expectation that we were going to be appealing a ruling on the Rule 56 motion on Count 2. Then she talks about the findings of fact. And then the judge says, the difficulty, as I see it here, may be the fact that in each of these proceedings the facts are utilized in a different way. He goes on to talk about summary judgment. So I don't think there should be a problem there. I think the appellate court understands that the facts that I used on the motion for summary judgment are taken by me in the light most favorable. And he just mushes them all up together in this one opinion. Well, I think that, to be fair, the judge recognized that the facts are taken in the light most favorable to a non-movement at summary judgment. And he doesn't quite say that. He says later, this is page 4, there could be some misunderstanding or some difficulty because the same fact may be used differently in both proceedings. But I don't think there is any question that the facts that I used in resolving the motion for summary judgment were taken in the light most favorable to the non-moving party. So I think everybody leaves this little conference, it's like a Maybe you didn't. Don't we need at least to get a clarification from the district court judge? What I heard was the facts were treated one way on summary judgment and a different way at trial. And the motion for other clarification was denied summarily. And at that point, when we walked out of court, driveline knew that if it wanted to invoke a de novo standard of review it would apply only to summary judgment. And if it was going to be challenging the judgment on our counterclaim, a different standard of review was going to apply, the clearly erroneous standard, because factual findings were made. The footnote says the facts in this section are derived from the summary judgment record. What's that supposed to mean? Well, affidavits and everything else was filed with the court on summary judgment. But from the summary judgment perspective, this is when they got submitted to the court. From the record. So for example, in our proposed findings of facts that were submitted under Rule 52, it would cite to material that was already of record from the summary judgment briefs, because we're not going to file the same material twice. So the court used a lot of that material. And it used it, at that stage, it was free to make determinations of credibility. It was free to view the evidence and weigh the evidence, which it couldn't do on summary judgment. So think of it. If you're the district judge, you've got these facts, and you're limited in using them at summary judgment to construe them in the light most favorable to the non-movement, then you've already decided those issues of fact one way. And now you're going to trial. And you can use that same evidence in a new way. That's why the scope of the trial question is so important to me, because if it was a partial trial on damages that just reviews the things as to which there's no genuine issue of material fact, thus no need for a trial, so you put that stuff in place. It's not like it's irrelevant, but you say, we didn't even need a trial in this part. This was summary judgment. And then you carry on with the part that you did need a trial for. That's one scenario. A different scenario is what you say, starting all over again from A to Z, and you're back at A, but you just take all the stuff that was submitted at summary judgment. Now you make your credibility findings, even though, of course, there's no live testimony, but and the way to really know that what I'm telling you is the case is look at the Rule 52 finding that includes findings of fact that have nothing to do with damages. When did they get notice of termination? When did they first cut off shipments? None of that has anything to do with damages, but those are factual findings in the judge's order. They're also factual suggestions of fact, or proposed findings of fact, that we put in our trial briefs in order to get the judge to find all the elements of our cause of action of the counterclaim. Liability, damages, breach, all of that still had to be proven. We did not get a pass on proving any of those elements. We had to prove that at trial, and we did. That's why they should not be reviewed again. That's why it's not before I'm telling you now because they didn't appeal the decision on the counterclaim. They, for whatever reason, chose not to do that. I propose to you... I'm saying that it's probably a giant misunderstanding at best. I can see the findings of fact, and then he's got this ambiguous footnote. The facts in this section are derived from the summary judgment record. You just say that's a mechanical point, not a legal point. Then, boilerplate, everybody always says this. Rule 52 says findings of fact, conclusions of law, whatever. Again, I submit to you that the factual findings, wherever they were derived from, have no place in his opinion if the only issue was damages. Why? Why isn't it important to tee it up, to give context? You don't need to make factual findings about when they got notice or what shipments took place. Maybe that pertains to how long the damages accrued. I disagree. I don't think the factual findings in the judge's opinion were focused narrowly on damages or the duration of damages. I think that they were focused on liability. Who breached the contract first? Then he gets into the reason why we would do damages on the counterclaim. Do you think he could have come to different decisions about who breached the contract first on the partial summary judgment on the main claim and this trial on the counterclaim? I don't think he could, based on the record, because I believe the record supports the fact that driveline breached first. That's, I think, why this is kind of a muddled record and you're struggling with it a little bit, maybe, because he had already decided, giving them the benefit of the doubt at summary judgment in our favor. Then he had to kind of put that aside and say, okay, based on what I already know about this case, who's entitled to damages on the counterclaim? What are the damages? Is there liability? Of course there's liability. I already went through this monster record and decided these issues. I'm going to decide again that driveline breached first and now I'm going to get into the more detailed that I didn't have at summary judgment and explain why the value of the damages are what they are and actually award a sum certain in Arcticat's favor. Again, none of which has been appealed. That's not before you. The only issue before you is winding the clock back before the trial. Was summary judgment appropriate against driveline on their count too? Well, you would agree that the characterization of this was quite different. If they thought that the liability issue basically had been resolved by partial summary judgment, that's what you use partial summary judgments for. You can have one on liability and have a partial trial on damages. They wouldn't have needed to file a separate appeal on the counterclaim. Nobody filed a partial motion for summary judgment. Our motion for summary judgment on the counterclaim was a motion for summary judgment. It doesn't have to be labeled that. Rule 56 lets the judge handle that as he wishes. I agree. Absolutely. But the judge didn't issue partial summary judgment in Arcticat's favor. The judge said summary judgment is denied. Our counterclaim was still out there and in need of proving, which is what we did at trial. We didn't get a resolution to say you win on liability, but you haven't proved damages yet, so we're going to parse this out. You're going to get a partial victory now, and then you're going to have to go to trial on damages. He didn't do that. His order denied summary judgment in its entirety on our only claim. 100%. So all of our elements of our cause of action still needed to be proved. And that's what we did. In terms of the payment arrearages in 2008, did the amounts of those arrearages become more material in view of the fact that Arcticat was transitioning to another supplier? The parties weren't going to keep doing $15 million per year in business, were they? No. Absolutely not. And the amount of the arrearage, incidentally, is one of the factual findings the district judge made under Rule 52. He determined, as a matter of fact, that there was $185,000 outstanding at the time of termination. That's another issue of fact they want reviewed de novo before you today. That's inappropriate. There was a factual finding made under Rule 52 about that. That should not be unwound. This is a very interesting procedural quagmire you find yourselves in. There's a second one that I briefly want to address because I see I've only got a minute left. Now, there's a lot of talk about late payment as a prior breach. Arcticat paid late, so they breached first, so summary judgment never should have been granted. We talked about that a lot with my opposing counsel a while ago. That issue was never pled in count two of their complaint. Their complaint had two claims. There was a breach by Arcticat because they gave us unreasonably short notice of termination when they terminated, and after termination, they failed to buy up the remaining inventory and work in process. That's it. All this business about should have told us about China sooner, and you should have paid on time, timeliness of payment, that's all a red herring because it wasn't in their complaint, and it wasn't an affirmative defense to our counterclaim. We raised that issue in our motion for summary judgment on our counterclaim, and I do believe that Judge Capallo may have missed the boat on that because he asserts at a footnote that late payment, while it's not a part of their claim or an affirmative defense, it's an element of their proof in count two. It's not an element of their proof in count two that Arcticat paid late. I think he got that wrong, and for that reason, all this time we're spending talking about late payment, did Arcticat pay late? I don't think that matters. I don't think that matters at all because it wasn't a part of their affirmative claim, and it wasn't an affirmative defense. Okay. Thank you very much, Mr. Hattari. Ms. Cook. Briefly, as much briefly as I can. I believe my opposing counsel has basically conceded what we've been trying to argue in the sense that the record, it was predetermined before we even got to the trial in the papers, liability upon the breach of the contract. My opposing counsel stated that could not have been re-litigated or re-raised at that time. I heard him say the trial in the papers was something that started from scratch. He said he had to re-plead and prove his elements, but when your Honor asked him about that finding of liability, he said it was predetermined before we got to the trial in the papers. I think that's facts. The fact that he does not address liability in the counterclaim finding on summary judgment just says that he can't reach damages because of the issues of material fact, and the fact that his trial in the papers was the papers we re-submitted that were submitted from summary judgment to find what those damages are. It also misses the fact that there was another count that had to be resolved before we could appeal. You can't appeal until all claims are resolved, and we had count one that we still had to prove up in its entirety because that was also denied when ARTIC had moved for summary judgment on that count. So we had to go through and file our own affirmative prove up for count one on what was delivered, when was it delivered, did they reject, accept, revoke acceptance, all of the UCC factors you would have to prove. That had to be resolved. I think though whether we receive notice in December, whether we receive notice in January or in February, all of that is irrelevant because that's all a breach. You can't give someone who has eight months of lead time three months or one month or two months of notice that you might be resourcing something. You would need to prove that as a matter of contract. You could do it. It would be probably a pretty awful contract to be in. It would be a pretty egregious contract. We had the expert witness who was a 30 year expert in the industry on this particularized industry who was able to present his testimony and evidence on what industry standard and usage of trade terms were. None of which was considered by the district court. As this court is aware, when you're detailing with these battle reforms issues, you have to deal with course of performance, usage of trade, gap filler provisions, the terms the parties agree on. It's a holistic approach. There can't be this sole focus on payment and delivery, which is why our count two is about a breach of the total contract. The damages that stem from that are due to the unreasonable notice of termination, are due to the concealment that goes with that, and the failure to phase out our There is a concession that there was a stop. Would the parties agree there was a stoppage of delivery in February of 2008? There's a lot of dispute as to which day, based upon the different facts that are presented by the party, which is a contested issue of material fact, and a dispute whether there was one in January and when the payments were coming in. The stoppage was a holistic approach by a business when they're looking at what their working capital is. As Judge Rovner aptly noted, it wasn't going to be $15 million anymore. You can see that in January when ordering the previous January was at $1.4 million of inventory. The only orders they received in January 2008 were $154,000. That's a loss for a small business of 1.2 of working capital when you have no certainty going forward. You can't just look at, oh, it was this small percentage based on a good year. You have to look at the actual shoes that Driveline was sitting in at the time. I'm sorry, I couldn't hear you, Your Honor. Why isn't it fatal that you didn't appeal the judgment on Ardicat's counterclaim? Because the finding, apologies. No, your opponent says it was fatal. You tell me why it wasn't fatal. I believe that it wasn't fatal, Your Honor, because of the fact that it was a finding of liability on count two, and they said they could not do damages on the counterclaim. And we still had count one that had to be resolved before we could appeal everything. You have the right to appeal a summary judgment ruling at any time. You don't have to do it at the time that it was entered. And the fact that we had to go and we had to resolve count one and we just had to determine the damages, but not the liability, which we preserved throughout in footnotes stating we were only participating in the trial and the papers as to things not resolved at summary judgment solely so that we could appeal count two and the summary judgment rulings and the finding of liability. So I don't believe that that's fatal. I believe we followed what would be a procedurally proper situation in order to get to the efficient resolution of this matter. I believe my time's up. So if there are no further questions. I see none. So thank you very much. Thank you as well, Mr. Hotari. The court will take this case under advisement and we will have a brief recess of about five minutes.